# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 CR 46-2 |
| ) | |
| v. ) | Judge George W. Lindberg |
| ) | |
| EDGARDO LOPEZ-ARROYO, ) | Magistrate Judge |
| ) | Martin C. Ashman |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Edgardo Lopez-Arroyo's ("Lopez-Arroyo") Motion to Dismiss the criminal indictment against him pursuant to the Sixth Amendment's guarantee of the right to a speedy trial. Lopez-Arroyo filed an earlier Motion to Dismiss under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, which the District Judge denied. In doing so, however, the District Judge noted that the United States of America ("the Government") failed to adequately explain the amount of time that had elapsed between the time of Lopez-Arroyo's arrest in Puerto Rico and his transfer to the Northern District of Illinois for arraignment. Accordingly, the District Judge urged Lopez-Arroyo to consider filing a second dismissal motion on Sixth Amendment grounds and, after he did so, referred the matter to this Court pursuant to Local Rule 72.1 for a Report and Recommendation. Based on an evidentiary hearing held on July 26, 2010 and the parties' post-hearing briefs, the Court submits its recommendation that Lopez-Arroyo's motion be denied.

## I. Background

At some point in 2007, the Government began investigating suspected drug trafficking activities carried out by Lopez-Arroyo and his co-defendant in this case, Reynaldo Colon-Laboy ("Colon-Laboy"). According to the Government, Lopez-Arroyo delivered an advance payment on multiple kilograms of cocaine to an undercover agent of the Drug Enforcement Agency ("DEA") in Puerto Rico on January 8, 2009. Five days later Colon-Laboy was arrested in Schiller Park, Illinois when he attempted to pick up the cocaine he believed had been transported from Puerto Rico. Colon-Laboy quickly decided to cooperate with the Government and made a proffer on January 15 implicating Lopez-Arroyo in the trafficking operation. On January 28, 2009, the Government filed a criminal complaint in the Northern District of Illinois against Lopez-Arroyo and an unnamed co-defendant in Case No. 09 CR 68. A warrant in that case was issued, and Lopez-Arroyo was arrested in Puerto Rico on January 29, 2009. Five days later on February 4, Magistrate Judge Marcos Lopez ordered him to be removed from Puerto Rico to the Northern District of Illinois to answer the charges in Case No. 09 CR 68.[1]

Unfortunately, what followed was a trail of serious missteps that resulted in a significant delay in carrying out the removal order. The Magistrate Judge's courtroom deputy, Minerva Figueroa, forwarded an electronic copy of the order to two email addresses on February 4, as was her practice in removal cases that were under seal. (Tr. at 161.) The first was the address of

---

[1] The Government filed an *ex parte* motion for an extension of time to return an indictment against Lopez-Arroyo in Case No. 09 CR 68 before Chief Judge Holderman in the Northern District of Illinois. Although those proceedings remain under seal, the Government states that time was extended until March 30, 2009. A two-count indictment in the instant case, Case No. 09 CR 46, was issued on March 25, 2009, charging Lopez-Arroyo and Colon-Laboy with possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841.

Warren Almodovar, a Supervisory Deputy United States Marshal at the Guaynabo Metropolitan Detention Center ("MDC Guaynabo") where Lopez-Arroyo was being detained. (*Id.* at 161-62.) The reasons for sending the order to Almodovar are unclear, as he testified that he was not involved in transferring prisoners out of MDC Guaynabo. (*Id.* at 179.) The second address, prd.ops@usdoj.gov, was used for prisoner-related communications from state and federal courts to the Bureau of Prisons ("BOP"). (*Id.* at 161-62, 165.) This address was monitored by Waldemar Lorenzo, a Prisoner Support Specialist with the Marshals Service in Puerto Rico, and the person responsible for transferring prisoners. (*Id.* at 165.) Mr. Lorenzo receives between 150 and 200 emails daily on the prd.ops@usdoj.gov address and did not recall receiving Ms. Figueroa's communication on February 4, 2009. (*Id.* at 166-67.)

The record does not indicate what actions, if any, were taken for the next four months by, or on behalf of, Lopez-Arroyo to transfer him to Chicago. In mid-June, however, DEA agent Virgilio Perez was asked by the United States Attorney's Office in Puerto Rico to look into where Lopez-Arroyo was being detained. (*Id.* at 152.) Mr. Perez had been working in March, 2009 through Mark Foreman, a BOP agent at MDC Guaynabo, to see if Lopez-Arroyo was interested in cooperating with the Government – an offer Lopez-Arroyo declined to accept. (*Id.* at 152-53.) Perez responded to the prosecutor's request by trying to reach the Marshals Service twice by phone. Neither of his calls was met with a response. (*Id.*) Perez then once more contacted Foreman, who told him that as of June 25 Lopez-Arroyo was still classified as a pre-sentence inmate without any transfer order in his file. (*Id.* at 153.)

Perez promptly contacted the United States Attorney's Office in Chicago to alert it that Lopez-Arroyo was being housed in Puerto Rico without an order transferring him to the Northern

District of Illinois. (*Id.*) He was told to reach out once again to the Marshals Service in Puerto Rico and to deliver a copy of the removal order to the Service. (*Id.* at 154.) Perez again called the Marshals Service and this time successfully reached an unnamed Service employee. Perez informed the employee of Lopez-Arroyo's status and offered to deliver a copy of the removal order. (*Id.* at 154-55.) The employee answered that he did not need the removal order, took the Marshal Service number for Lopez-Arroyo that Perez gave him, and assured Perez that the matter would be corrected. (*Id.* at 155.) For reasons not presented at the hearing, the Marshals Service did not act on Lopez-Arroyo's transfer after Perez's call.

As discussed below, the parties dispute the extent to which Lopez-Arroyo was represented by counsel during the spring and summer months of 2009, but both agree that he retained defense attorney Rafael Castro-Lang ("Castro-Lang") by September of that year. On September 14, Ms. Figueroa received a call from Castro-Lang's office concerning procedures for filing an appearance on behalf of Lopez-Arroyo in sealed Case No. 09 CF 68. (*Id.* at 161-62.) The call alerted Ms. Figueroa for the first time that Lopez-Arroyo was still being detained in Puerto Rico, and she immediately contacted Waldemar Lorenzo at MDC Guaynabo and told him that a transfer order had been entered on February 4. (*Id.* at 162.) Also learning of this fact for the first time, Lorenzo personally picked up the order at Ms. Figueroa's office the same day, and a court hearing was held on September 15, where Mr. Castro-Lang represented Lopez-Arroyo. Lopez-Arroyo was subsequently transferred to Miami on September 21 and then to Chicago three weeks later on October 14, 2009. He was arraigned in this Court on November 18, 2009.

## II. Legal Standard

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This right is similar to that provided by statute pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, but is narrower in scope. Unlike the statutory right, the Sixth Amendment's right to a speedy trial only protects against delays that result in prejudice to a criminal defendant. *United States v. Gearhart*, 576 F.3d 459, 462 (7th Cir. 2009). The constitutional right attaches after a defendant is indicted, arrested, or suffers some other form of official accusation. *United States v. Souffront*, 338 F.3d 809, 835 (7th Cir. 2003). *Cf. United States v. Hills*, – F.3d – , Nos. 09-2151, 09-2152, 09-2153, 2010 WL 3239394, at *7 (7th Cir. Aug. 18, 2010) ("The constitutional right to a speedy trial is triggered when an indictment is returned against a defendant."). In reviewing a defendant's Sixth Amendment speedy trial challenge, courts inquire into whether: (1) the delay was unusually long; (2) the government or the defendant was more to blame for the delay; (3) the defendant asserted his right to a speedy trial in due course; and (4) the defendant suffered any prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *United States v. White*, 443 F.3d 582, 589-90 (7th Cir. 2006).

## III. Discussion

As a preliminary matter, the Court notes that Lopez-Arroyo's Motion to Dismiss is almost exclusively concerned with the nearly eight month period from his initial appearance before a Magistrate Judge on February 4, 2009 to his transfer out of Puerto Rico on September 21. Neither his Motion nor his evidence in the hearing addresses the three-week period between

September 21 and October 14 when he was detained in Miami while being transported to Chicago. In the absence of any argument or evidence on this period, the Court limits its analysis below to Lopez-Arroyo's confinement in Puerto Rico.

### A. Length of the Delay

The first factor in a Sixth Amendment speedy trial claim acts as a threshold requirement for examining the remaining three issues, *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009), and a complete analysis is not required in the absence of a delay that prejudices the defendant. *White*, 443 F.3d at 589. Courts have generally found that intervals of more than one year between an event that gives rise to the Sixth Amendment right and the trial itself are presumptively prejudicial to a defendant. *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000).

It is undisputed that Lopez-Arroyo's transfer from Puerto Rico to the Northern District of Illinois was postponed from the time it was ordered on February 4, 2009 to the day he arrived in Chicago on October 14. Partly as a result of this long interval, over eighteen months have elapsed from his arrest on January 29, 2009 to the present without the start of trial. The Government acknowledges that the first factor favors Lopez-Arroyo but argues that the delay was not so long as to weigh heavily against the Government. (Tr. at 7-8.) Lopez-Arroyo does not contest this argument, claiming only that the delay was sufficiently long to trigger an analysis of all four factors in a speedy trial challenge. Accordingly, the Court does not determine the exact weight to be assigned to the first factor except to note that it favors Lopez-Arroyo and is clearly sufficient to require an examination of the remaining factors.

### B. The Reasons for the Delay

More significant in this case are the reasons for the prolonged transfer. Again, the Government concedes at least part of the argument on this issue by admitting that the delay was negligent and that the responsibility for it lies with the Government. (*Id.* at 3, 8.) The causes for such negligence, however, are less obvious but are important in determining the weight to be assigned to the second factor. It is well established that "[d]ifferent weights should be given to different reasons for delay[.]" *Arceo,* 535 F.3d at 684. The Supreme Court has distinguished between intentional and negligent actions, stating that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while a "more neutral reason such as negligence . . . should be weighted less heavily." *Barker v. Wingo,* 407 U.S. 514, 531 (1972); *see also Doggett,* 505 U.S. at 657 ("Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution[.]"). The issue, therefore, is not which party the second factor favors, but the weight to be assigned to it.

Lopez-Arroyo presents little argument on this point, contending briefly that the Government's actions became intentional once it knew there had been a clerical error in transmitting the removal order to the proper authorities at MDC Guaynabo. (Def's. Mot. at 5.) This reasoning overlooks that the "Government" did not function as a single entity in this case but as a complex bureaucracy involving at least five different branches – federal court officials, prosecutors in Puerto Rico and Chicago, the DEA, the BOP, and the Marshals Service. Each of these branches had different information about Lopez-Arroyo's situation at different periods of

time, and each appears to have miscommunicated with the others throughout his detention. It is difficult to infer intent from knowledge, as Lopez-Arroyo contends, because the various agencies did not act in concert with one another. Indeed, given their repeated failures to communicate effectively it is difficult to see how they could have coordinated the events presented here while being motivated by a common intent to prevent Lopez-Arroyo from being transferred to Chicago.

No evidence, for example, supports a contention that Mr. Lorenzo, who was ultimately responsible for transferring prisoners from Puerto Rico, had such a motive. His failure to receive (or perhaps to notice) Ms. Figueroa's emailed removal order is troubling, but the record does not suggest it constitutes more than negligence. Lorenzo received 150 to 200 emails a day and was required to sift through them to determine which were directed to him and which were relevant to other officials. (Tr. at 166.) Even if Lorenzo had tried to inquire into Lopez-Arroyo's status by searching his files, his efforts would not have revealed the removal order because Lopez-Arroyo's case had been placed under seal. As noted above, moreover, both Lorenzo and Ms. Figueroa took prompt action in September when they learned that the court's removal order had not been received and acted upon.

The evidentiary hearing also showed that DEA agent Perez took reasonable steps to comply with the request by the United States Attorney's Office in Puerto Rico to determine Lopez-Arroyo's status: he attempted to reach the Marshals Service twice, contacted Mr. Foreman, and called prosecutors in Chicago. Like Lorenzo, Perez was unaware that a removal order had been entered by the court and was told by Mark Foreman that Lopez-Arroyo was classified as a pre-sentence inmate. Undoubtedly, the United States Attorney's Offices in Chicago and Puerto Rico could have taken additional action to see that Lopez-Arroyo was transferred once they

learned he was still detained in Puerto Rico. Lopez-Arroyo, however, did not present evidence at the hearing that illuminated their reasons for not doing so. But the Chicago office did take some affirmative steps to remedy the situation by telling Perez to contact the Marshals Service once again in early July and to hand over a copy of the removal order to the Service.

The unresponsiveness of the Marshals Service is of greater moment in this case. As of early July, the Marshals Service in Puerto Rico had at least some notice from Perez that Lopez-Arroyo had been ordered to be removed to Chicago, and its failure to take any action is a cause for concern. Nevertheless, two elements mitigate against finding the kind of intentional action Lopez-Arroyo contends is present here. First, the record does not indicate who Perez contacted at the Marshals Service in early July because he did not keep a record of his conversation. (*Id.* at 154-56.) The employee may or may not have had sufficient knowledge or authority to grasp the full import of what Perez said. Second, Lopez-Arroyo has not presented any evidence suggesting that the Marshals Service had a motive to keep him in Puerto Rico or that it acted in concert with another branch of the Government to delay the start of trial.

In the absence of any evidence supporting an intentional delay, and given the number of bureaucratic actors at play, the Court finds that Lopez-Arroyo's delayed transfer was the result of negligence, albeit of a remarkably high level. Thus, the second speedy trial factor favors Lopez-Arroyo but is weighed more lightly than it otherwise would be if an intentional delay were present.

## C. The Assertion of the Right

A defendant's assertion of the right to a speedy trial weighs heavily in deciding if his Sixth Amendment right has been violated. *See Barker*, 407 U.S. at 531-32 ("The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."). The Supreme Court has stated that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532.

Lopez-Arroyo formally presented his Sixth Amendment claim in a motion filed on November 17, 2009. The Government argues that he should be bound by his various attorneys' failure to file an earlier motion because Lopez-Arroyo was represented by counsel from the winter of 2009 through the time of his removal to Chicago. *See United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) (explaining that a client is bound by his attorney's acts, even if they are negligent). For most of this time, according to the Government, Lopez-Arroyo was represented by attorney Lorenzo Palomares-Starbuck ("Palomares-Starbuck"). In rebuttal, Lopez-Arroyo contends that he was unrepresented from the time he was placed in MDC Guaynabo through the removal hearing on September 15, when Castro-Lang appeared on his behalf.[2]

The evidence related to whether Palomares-Starbuck represented Lopez-Arroyo presents an incomplete picture. The only clear fact is that the two men met on several occasions; Lopez-Arroyo conceded they had two or three interviews in the summer of 2009, while

---

[2] Both parties appear to concede that an attorney from the federal defender's office in Puerto Rico initially appeared on Lopez-Arroyo's behalf, but the Government does not argue that this representation was ongoing.

Palomares-Starbuck contended they had additional meetings in the spring. Beyond that, they disagreed in the hearing on the nature and extent of Palomares-Starbuck's representation. According to Palomares-Starbuck, he began representing Lopez-Arroyo in February, 2009, although no fee was paid, no contract was signed, and no appearance was ever filed. (Tr. at 28, 39, 49.) The attorney attributed his failure to sign a contract or to appear on Lopez-Arroyo's behalf to local practices in Puerto Rico, (*id.* at 49-50), and courts in that jurisdiction have found that neither a fee nor a contract is required. *Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc.*, 96 F. Supp.2d 106, 109-110 (D. Puerto Rico 2000). Palomares-Starbuck testified that he was prepared to travel to Chicago to represent him on 48 hours' notice. When prosecutors in Chicago called to give him a two-day notice of the arraignment, Palomares-Starbuck contends that his representation ended by mutual agreement with Lopez-Arroyo and his family. (Tr. at 37-38.) By contrast, Lopez-Arroyo testified that he never retained Palomares-Starbuck and never considered him to be his attorney despite their meetings. (*Id.* at 95-97.) His mother confirmed this testimony, stating that her son told her he did not like Palomares-Starbuck and that she should not hire him. (*Id.* at 64-67.)

The contested and limited nature of this evidence is not sufficient for the Court to find that Palomares-Starbuck represented Lopez-Arroyo. "It is well established that under Puerto Rico law an attorney-client relationship begins when a potential client seeks the advice or representation of an attorney on a legal issue." *Campos-Matos v. Evanstone Ins. Co.*, 208 F. Supp.2d 170, 173 (D. Puerto Rico 2002). Here, Lopez-Arroyo did not seek out Palomares-Starbuck for advice; his family approached the attorney and asked him to visit their son at MDC Guaynabo. (Tr. at 28-29.) Accordingly, the evidence does not support a finding that

Palomares-Starbuck's failure to assert a speedy trial claim on Lopez-Arroyo's behalf weighs in the Government's favor.

This does not mean, however, that the third speedy trial factor favors Lopez-Arroyo. Even unrepresented defendants must take reasonable steps to alert authorities that they are asserting a Sixth Amendment right, though their efforts need not be "procedurally perfect." *Douglas v. Cathel*, 456 F.3d 403, 418 (3d Cir. 2006). Recognizing this, Lopez-Arroyo argues that he complained about his detention to Haydee Batista, a correctional treatment specialist at MDC Guaynabo, whose duties include taking intake screenings of prisoners and monitoring their recreational activities. (Def's. Mot. at 6; Tr. at 92-94.) Lopez-Arroyo testified that he made some initial, unspecified complaints with Ms. Batista in May, 2009 but that it was not until August that he first raised concerns about the amount of time it was taking to transfer him to Chicago. (Tr. at 92-93, 115.) According to Lopez-Arroyo, Ms. Batista called the Marshals Office during their August conversation, apparently in an attempt to alert the Service that he was being detained at MDC Guaynabo. (*Id.* at 115.) Ms. Batista contested this testimony by stating that she did not recall any complaint from Lopez-Arroyo about his detention; that she deals with nearly 240 inmates, meeting each detainee once every three months; that it is not her practice to call the Marshals Service; and that her only response to a complaint such as the one alleged by Lopez-Arroyo would have been to consult his attorney or to contact the court involved in his case. (*Id.* at 180-84.)

Even assuming the truth of Lopez-Arroyo's testimony, the evidence presented at the hearing is not sufficient to find that he took reasonable steps to assert his Sixth Amendment right. Lopez-Arroyo remained silent on the issue for six months according to his own testimony, and he

did not raise concerns about his delayed transfer until August, 2009. What he said, moreover, was described at the hearing only as a single complaint pertaining to the transfer itself, not to the start of his trial. The Court recognizes that "[t]here is no requirement that a pro se defendant make a formally perfect Speedy Trial demand," *United States v. Battis*, 474 F. Supp.2d 727, 733 (E.D. Pa. 2007), and no doubt a detainee is not obligated to use specific phrases like "speedy trial" or "Sixth Amendment" that may be unfamiliar to him. Under these facts, however, one complaint that did not specifically refer to trial, and that was made to a prison official who gave no indication that she understood him to be concerned about the start of trial, is not sufficient to find that Lopez-Arroyo asserted his right to a speedy trial.

The Court notes in this regard that other evidence presented at the hearing failed to suggest that Lopez-Arroyo had on-going concerns about his trial date while he was held at MDC Guaynabo. Ms. Batista, for example, stated that her practice was to tell prisoners with legal questions that they should contact the court or an attorney, but Lopez-Arroyo presented no evidence that his trial date concerns were so pressing that he attempted to do so. He may not have been represented by Palomares-Starbuck, but Lopez-Arroyo met with him several times in the summer of 2009 without expressing concerns about his trial date.[3] (Tr. at 59.) He also failed to raise the issue with Castro-Lang, who did represent him in September. The Court, therefore, finds that the third factor favors the Government because Lopez-Arroyo did not assert his right to a speedy trial under the Sixth Amendment prior to the filing of his motion on November 17, 2009.

---

[3] Lopez-Arroyo's silence on this issue may have been due to the fact that Palomares-Starbuck told him in July that it would take another three to four months to transfer him to Chicago. (Tr. at 59-60.)

### D. Prejudice

The Supreme Court has emphasized that the final factor in a speedy trial analysis should be assessed in light of the interests protected by the defendant's constitutional right. *Barker*, 407 U.S. at 532; *see also United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992). These include three identifiable issues: (1) to prevent oppressive pretrial incarceration; (2) to minimize an accused's anxiety and concern; and (3) to limit any impairment to his defense. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The fact that Lopez-Arroyo's prolonged detention is presumptively prejudicial under the first speedy trial factor does not, in itself, require a finding of prejudice under the fourth factor. *See Koller*, 956 F.2d at 1414 (finding an eight and one-half month detention to be prejudicial under the first factor but not under the fourth); *see also Barker*, 407 U.S. at 534 (finding a ten month pretrial detention to be only minimally prejudicial). The eight and one-half month delay in this case is a matter of concern, especially in light of the fact that it was due to continued miscommunications between the federal agencies described above. Nevertheless, Lopez-Arroyo does not address the first interest protected by his right to a speedy trial, and the Court finds that any prejudice that may have ensued from his detention was minimal.

Lopez-Arroyo briefly argues that he satisfies the second issue by stating that he became "frantic" over the absence of counsel when his court-appointed attorney, who appeared only once in February, 2009, ceased representing him. (Def's. Mot. at 7.) In order to show the kind of uneasiness required to satisfy the anxiety factor a defendant must demonstrate he suffered a "psychic injury" beyond what a criminal defendant would ordinarily experience. *Hakeem v.*

*Beyer*, 990 F.2d 750, 762 (3d Cir. 1993). Lopez-Arroyo, however, presented no evidence at the hearing that he was seriously concerned about retaining an attorney at all. He did not, for example, contact the federal defender's office in Puerto Rico following his February, 2009 appearance before the Magistrate Judge, and he specifically rebuffed Palomares-Starbuck's willingness to represent him by telling his mother, "Mom, don't hire him. I didn't like him." (*Id.* at 65, 114.) No evidence suggests that he expressed any uneasiness to prison officials about his lack of representation.

Lopez-Arroyo makes a more focused argument on the final issue of the prejudice factor, claiming that his defense was impaired because his lengthy confinement allowed his co-defendant to win the "plea bargaining race" with the Government. (Def's. Mot. at 6.) No evidence supports this contention. Colon-Laboy, the co-defendant in this case, was arrested on January 13, 2009 and began cooperating with prosecutors nearly two weeks before Lopez-Arroyo was arrested. In fact, it was his January 15 proffer that led to Lopez-Arroyo's arrest in Puerto Rico. Acting on behalf of DEA agent Perez, Mark Foreman approached Lopez-Arroyo at MDC Guaynabo to ask if he was interested in cooperating with the Government – an opportunity that Lopez-Arroyo declined – and told Lopez-Arroyo that he could contact him at any time if he decided to cooperate. (*Id.* at 151-52, 190-92.) Moreover, Lopez-Arroyo stipulated at the hearing that he has been approached by the Government four times since he arrived in Chicago with an opportunity to cooperate. (*Id.* at 199.)

The absence of any concrete evidence at the hearing leads the Court to conclude that Lopez-Arroyo's defense was not prejudiced by the delay in this case. No evidence suggests that the Government's case against Lopez-Arroyo was enhanced by his long detention in Puerto Rico,

and such a showing would not, in itself, even be sufficient to demonstrate prejudice. "'Prejudice' is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper [a] defendant's ability to present his defense." *United States v. Salerno*, 108 F.3d 730, 738 (7th Cir. 1997) (internal quotation and citation omitted). Here, the evidence that would have been available to Lopez-Arroyo to develop his defense remains accessible to him, including witnesses, statements, and the cocaine that was allegedly shipped to Chicago. (Tr. at 148-50.) As result, Lopez-Arroyo has not shown how the delay in transporting him to Chicago caused such anxiety or so impaired his ability to defend himself at trial that the prejudice factor weighs in his favor.[4]

## IV. Conclusion

For the foregoing reasons, the Court finds that Lopez-Arroyo has not demonstrated that he asserted his right to a speedy trial in a timely manner or that his defense in this case has been prejudiced by the delay in transporting him from Puerto Rico to Chicago. The Court, therefore,

---

[4] Lopez-Arroyo contends in his Motion to Dismiss that the Government also created two post-transfer delays: (1) it caused the Court to reschedule the date for filing pretrial motions, and (2) it failed to file a timely response to an earlier Motion to Dismiss. (Def's. Mot. at 3-4.) Lopez-Arroyo provides no analysis of these grounds for a Sixth Amendment violation in his Motion, did not present evidence on either issue at the hearing, and has abandoned both arguments in his post-hearing brief. The Court originally set the deadline for pretrial motions on December 9, 2009 and later extended the date to December 30. (Dckt. ## 29, 36.) On the latter date, however, the Court again extended the deadline to January 20, 2010 on Lopez-Arroyo's own request. (Dckt. ## 37, 38.) The Government did fail to file a timely response on February 11, 2010 to Lopez-Arroyo's previous motion but did so on February 22. (Dckt. ## 45, 48.) Lopez-Arroyo does not state how this eleven-day delay or the two extensions granted December – one of which was on his own motion – have prejudiced him. In the absence of any argument or evidence on these issues, the Court finds that the two post-transfer delays alleged by Lopez-Arroyo do not alter its Sixth Amendment analysis above.

recommends that Lopez-Arroyo's Motion to Dismiss (Dckt. # 55) be denied for failing to show a violation of the Sixth Amendment's right to a speedy trial.

_____
MARTIN C. ASHMAN
United States Magistrate Judge

Dated: September 15, 2010.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable George W. Lindberg within ten (10) days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

PAUL CAMARENA, Esq.
North & Sedgwick, L.L.C.
500 South Clinton
Suite 132
Chicago, IL 60607

JEFFREY D. PERCONTE, Esq.
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Attorneys for Plaintiff

Attorneys for Defendant